IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GALE HEWETT, | HON. JEROME B. SIMANDLE |
| Plaintiff, | CIVIL NO. 05-2035 |
| v. | **OPINION** |
| WILLINGBORO BOARD OF EDUCATION, MARVIN D. HOPKINS, ALOZNO KITTRELLS, JOHN DOES 1-10. | |
| Defendants. | |

APPEARANCES:

William B. Hildebrand, Esq.
LAW OFFICES OF WILLIAM B. HILDEBRAND
1040 Kings Highway North
Suite 601
Cherry Hill, NJ 08034
    Attorney for Plaintiff

Richard L. Goldstein, Esq.
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, PA
Woodlands Fall and Corporate Park
200 Lake Drive East
Suite 300
Cherry Hill, NJ 08002
    Attorney for Defendant Willingboro Board of Education

Keith Harris, Esq.
BRAFF, HARRIS & SUKONECK
570 West Mount Pleasant Ave.
P.O. Box 657
Livingston, NJ 07039
    Attorney for Defendant Alonzo Kittrells

John S. Favate, Esq.
HARDIN, KUNDLA, MCKEON, POLETTO & POLIFONI, PC
673 Morris Avenue
PO BOX 730
Springfield, NJ 07081
    Attorney for Defendant Marvin D. Hopkins

**SIMANDLE**, U.S. District Judge:

The narrow question presented by this motion for partial judgment on the pleadings is whether the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"), imposes individual liability on employees of public agencies.[1]  Because the plain language of the statute so provides, the motion will be denied and the Court will permit Plaintiff to proceed with her claims against the Executive Director of Human Resources and Administrative Services and the Superintendent of the Willingboro Public Schools in their individual capacities.

## I.  BACKGROUND

The factual allegations that bear upon this motion are straightforward.

According to the Complaint, on October 4, 2004, Plaintiff, a teacher employed by the Defendant Willingboro Board of Education ("Board of Education"), severely injured her right foot following the packaging and transport of personal teaching materials and classroom supplies from McGinley Elementary School, where she had been a pre-Kindergarten teacher for approximately one year, to

---

[1] The instant motion was filed on behalf of Defendants Marvin D. Hopkins and Alonzo Kittrells by James F. Schwerin of the law firm of Parker, McCay.  Due to a conflict of interest, on February 23, 2006, Judge Joel B. Rosen granted Mr. Schwerin's motion to withdraw as counsel.  On March 8, 2006, Keith Harris, Esq. entered an appearance on behalf of Mr. Kittrells, and on March 14, 2006, Mr. Favate, Esq. entered an appearance for Mr. Hopkins.

Twin Hills Elementary School, where she was subsequently reassigned as a kindergarten teacher. (Compl. ¶¶ 4-10.) Plaintiff visited her primary physician the very next day, and he arranged for her to see a podiatrist, Dr. Donna McAnespey. (Id. at ¶ 11.) On October 7, 2004, Dr. McAnespey diagnosed Plaintiff as suffering from a stress fracture of the third metatarsal of her right foot. (Id. at ¶ 12.) Dr. McAnespey placed Plaintiff's right foot in a "cam walker" which extended to her knee, and provided her with a note directing that she remain out of work until October 18, 2004. (Id. Ex. A.)

On October 8, 2004, Plaintiff visited Twin Hills Elementary School to discuss her injury with the school's principal, Barbara Doneghy. Ms. Doneghy was was not in that day, however, so Plaintiff left her the note from Dr. McAnespey, recommending that she remain out of work until October 18th. Plaintiff also advised the school nurse, Brenda Carey, of her injury. Ms. Carey proceeded to inform the Human Resources Department of Plaintiff's injury, and arranged for Plaintiff to be seen by Dr. Nathaniel Evans. Dr. Evans evaluated Plaintiff's injury, and his diagnosis matched Dr. McAnespey's. (Id. at ¶ 13.)

According to the Complaint, the pain in Plaintiff's foot persisted and prevented her from working until October 12, 2004, at which time, at the advice of Dr. Evans, she returned to work with an assistant. Plaintiff continued to work until October 18, 2004, at which time Plaintiff's assistant was apparently removed

at Ms. Doneghy's instructions.  (Id. at ¶ 14.)  Plaintiff was working without an assistant when, on October 21, 2004, she further injured her right foot.  The following day, Plaintiff reported her injury to Ms. Carey.  (Id. at ¶ 15.)  Once again, Ms. Carey arranged for an appointment with Dr. Evans.  After an x-ray and follow-up visit with another podiatrist, Robert J. Filoramo, it was revealed that Plaintiff had a full fracture of the third metatarsal of her right foot.  Dr. Filoramo ordered that Plaintiff not work until a follow-up visit on November 22, 2004.  (Id. at ¶¶ 16-17.)

On October 28, 2004 Defendant Hopkins sent to Plaintiff a letter confirming her transfer to the position at Twin Hills Elementary School.  (Id. at ¶ 18; Ex. C.)  Several days later, on November 3, 2004, Defendant Alonzo Kittrells, the Superintendent of the Willingboro Public Schools, sent the following letter to Plaintiff:

> Dear Ms. Hewett:
>
> This is to advise you that, pursuant to N.J.S.A. 18A:16-1, the Willingboro Board of Education intends to exercise its right to terminate your employment with the district.  The decision is being made because of the district's need to have a full-time certified teacher in the classroom on a consistent basis.
>
> This letter is your official written 60-day notification of the Board's intention to terminate your contract.  Your last day in the district is January 3, 2005.

>    If you have any questions, please contact Mr. Marvin
>    Hopkins, Executive Director of Human Resources &
>    Administrative Services at 609-835-8674.
>
>    Sincerely,
>
>    Alonozo Kittrels
>    Superintendent of Schools

(Compl. at ¶ 19; Ex. D.)

Plaintiff filed this action on April 6, 2005, alleging violations under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq., and New Jersey law.

## II.   STANDARD OF REVIEW

The instant motion is for partial judgment on the pleadings under Rule 12(c), Fed. R. Civ. P.[2]  "The Rule 12(c) judgment on the pleadings procedure primarily is addressed to . . . the function of disposing of cases on the basis of the substantive merits of the parties' claims and defenses as they are revealed in the formal pleadings."  5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (3d ed. 2004).

Here, Defendants Hopkins and Kittrells argue that there can be no individual liability for employees of public agencies under the FMLA.  The Court finds that Defendants' arguments are directed at the sufficiency of the pleadings, not the substantive merits of Plaintiff's claims.  Indeed, Defendants acknowledge

---

[2] Under Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."

that "there may be fact disputes as to the reason for the termination of plaintiff's employment . . . ." (Def. Br. at 2.) Thus, the Court holds that Rule 12(b)(6), rather than Rule 12(c), is the appropriate vehicle to consider Defendants' arguments.[3]

A motion under Rule 12(b)(6) must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). A district court must accept any and all reasonable inferences derived from those facts. Unger v. Nat'l Residents Corp. v. Exxon Co., U.S.A., 761 F. Supp. 1100, 1107 (D.N.J. 1991); Gutman v. Howard Sav. Bank, 748 F. Supp. 254, 260 (D.N.J. 1990). Further, the court must view all allegations in the complaint in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

It is not necessary for the plaintiff to plead evidence, and it is generally not necessary to plead the facts that serve as the basis for the claim. Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977); In re Midlantic Corp. Shareholder Litigation, 758 F. Supp. 226, 230 (D.N.J. 1990). The question

---

[3] In any event, as the same standard for determining a motion to dismiss under Rule 12(b)(6) is used for motions under Rule 12(c), In re K-Dur Antitrust Litigation, 338 F. Supp. 2d 517, 528 (D.N.J. 2004), the Court's analysis will be identical in either case.

before the court is not whether plaintiffs will ultimately prevail; rather, it is whether they can prove any set of facts in support of their claims that would entitle them to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  In other words, in deciding a motion to dismiss, a court should look to the face of the complaint and decide whether, taking all of the allegations of fact as true and construing them in a light most favorable to the nonmovant, plaintiff's allegations state a legal claim.  Markowitz, 906 F.2d at 103.

### III. DISCUSSION

The issue presented by this motion turns on the statutory definition of "employer" under the FMLA.  When called upon to interpret a statute, courts must always begin with the statute's plain language.  Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997).  Where "the statutory language is unambiguous and 'the statutory scheme is coherent and consistent,'" a court cannot look farther.  Id. (quoting United States v. Ron Pair Enters., Inc., 489 U.S. 235, 240 (1989)).

Subsection (4) of Section 2611 provides, in full:

**(A) In general**

The term "employer" –

> **(i)** means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or pre-ceding calendar year;

>    **(ii)** includes –
>       **(I)** any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and
>       **(II)** any successor in interest of an employer;
>
>    **(iii)** includes any "public agency", as defined in section 203(x) of this title; and
>
>    **(iv)** includes the General Accounting Office and the Library of Congress.
>
> **(B) Public agency**
>
>    For purposes of subparagraph (A)(iii), a public agency shall be considered to be a person engaged in commerce or in an industry or activity affecting commerce.

29 U.S.C. 2611(4). "Person" is defined by the statute as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29 U.S.C. §§ 2611(8), 203(a). "Public agency" is defined by 29 U.S.C. § 203(x) as "the Government of the United States; the government of a State or political subdivision thereof; any agency of the United States (including the United States Postal Service and Postal Rate Commission), a State, or a political subdivision of a State; or any interstate governmental agency."

As noted above, the question before the Court is whether individual employees of public agencies may be held liable under the FMLA.[4] The logical starting point of the Court's analysis,

---

[4] The Third Circuit has yet to decide the issue of individual liability under the FMLA. Both parties recognize, however, and

therefore, is whether the Willingboro Board of Education is a public agency. For the following reasons, the Court concludes easily that it is.

The definition of public agency under the FMLA is found in 29 U.S.C. § 203(x), which provides:

> "Public agency" means the Government of the United States; the government of a State or political subdivision thereof; any agency of the United States (including the United States Postal Service and Postal Rate Commission), a State, or <u>political subdivision of a State</u>; or any interstate governmental agency.

(Emphasis added). See 29 U.S.C. § 2611(4)(iii). In New Jersey, the definition of "political subdivision" includes a "school district." N.J.S.A. 52:27-BB-2. See <u>McClain v. Bd. of Educ. Of Woodbury</u>, 30 N.J. 567 (1959) (holding board of education fell within statutory exception applicable to a "State or any political subdivision thereof"); <u>Stubaus v. Whitman</u>, 339 N.J.

---

this Court agrees, that the FMLA permits individual liability within the private sector. See <u>Matukaitis v. Pennsylvania Coalition Against Domestic Violence</u>, 2005 U.S. Dist. LEXIS 31046, at *9-10 (M.D.Pa. Nov. 8, 2005) (denying motion to dismiss by individual employees of a Pennsylvania non-profit corporation under the FMLA) (citing <u>Kilvitis v. County of Luzerne</u>, 52 F. Supp. 2d 403 (M.D.Pa. 1999); <u>Fassl v. Our Lady of Perpetual Help Roman Catholic Church</u>, 2005 U.S. Dist. LEXIS 22546, at *34 (E.D.Pa. Oct. 5, 2005)). See also 29 C.F.R. § 825.104(d) ("As under the FLSA, individuals such as corporate officers 'acting in the interest of an employer' are individually liable for any violations of the FMLA.") The FMLA tracks the statutory language of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et seq. <u>Kilvitis v. County of Luzerne</u>, 52 F. Supp. 2d 403, 412 (M.D.Pa. 1999), and, thus, the Court's conclusion is bolstered by decisions interpreting the FLSA's definition of employer to extend to individuals. See <u>Kilvitis v. County of Luzerne</u>, 52 F. Supp. 2d 403, 412 (M.D.Pa. 1999) (collecting cases).

Super. 38 (App. Div. 2001) (holding school districts are "creatures of the State"). Therefore, the Court holds that Defendant Willingboro Board of Education is a "public agency" under the FMLA. Plaintiff has not cited to a single case holding otherwise.

Having concluded that the Willingboro Board of Education is a public agency, the Court will turn its attention to 29 U.S.C. § 2611(4). Though that section is not a model of clarity, a plain reading indicates that public employees may be considered employers under that provision. Reading subsection (4)(A)(i) together with subsection (4)(A)(iii), the statute defines employer as including all public agencies. Therefore, under subsection (ii)(I), "employer" also includes "any person who acts, directly or indirectly, in the interest of [a public agency] to any of the employees of such [public agency]." Under this straightforward reading, individuals such as the Executive Director of Human Resources and Administrative Services and the Superintendent of the Willingboro Public Schools may be liable under the FMLA.[5] For this reason, the Court will deny Defendants' motion.

---

[5] For purposes of this motion only, the Court accepts as true Plaintiff's factual allegations contained in the Complaint that Defendants Hopkins, as the Executive Director of Human Resources and Administrative Services, and Kittrells, as the Superintendent of the Willingboro Public Schools, acted, directly or indirectly, in the interest of Defendant Willingboro Board of Education in deciding to terminate Plaintiff's employment.

The court in Darby v. Bratch, 287 F.3d 673, 681 (8th Cir. 2002), reached an identical result, holding:

> It seems to us that the plain language of the statute decides this question [of whether there is individual liability for public officials under either the FMLA]. Employer is defined as "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer[.]" 29 U.S.C. § 2611(4)(A)(ii)(I). This language plainly includes persons other than the employer itself. We see no reason to distinguish employers in the public sector from those in the private sector. If an individual meets the definition of employer as defined by the FMLA, then that person should be subject to liability in his individual capacity.

Id. (internal case citations omitted). For reasons already set forth, this Court finds the Eighth Circuit's straightforward analysis persuasive.

The Sixth Circuit reached a different conclusion in Mitchell v. Chapman, 343 F.3d 811 (6th Cir. 2003), a case upon which Defendants primarily rely.[6] The court there identified "three

---

[6] Though this Court is not bound by the decision in Mitchell, because Defendants rely almost exclusively on its reasoning, the Court will carefully consider the Sixth Circuit's opinion. The Court also notes that at least one other court in this Circuit has relied upon, without discussion, the Mitchell decision. See Smith v. Virgin Islands Port Authority, 2005 U.S. Dist. LEXIS 56, at *39 (D.V.I. Jan. 2, 2005).

Additionally, the Court is aware of the Eleventh Circuit's decision in Wascura v. Carver, 169 F.3d 683, 686 (11th Cir. 1999), holding that the FMLA does not impose individual liability on employees of public agencies. As the Sixth Circuit in Mitchell, 343 F.3d at 828-29, explained, though, the Wascura court concluded that it was constrained by a prior decision of that court refusing to extend individual liability under the FLSA to public agency employers. Because Wascura was so limited, and considering that that decision is not binding on this Court in any event, the Court will not further discuss that case.

11

factors emanating from the text and the framework of the statute" in support of its conclusion "that the FMLA's individual liability provision does not extend to public agencies." Id. at 832.

> First, Section 2611(4)(A) segregates the provision imposing individual liability from the public agency provision. Second, an interpretation that commingles the individual liability provision with the public agency provision renders certain provisions of the statute superfluous and results in several oddities. Finally, as evidenced by other provisions of the statute, the FMLA distinguishes its definition of employer from that provided in the FLSA by separating the individual liability and public agency provisions.

343 F.3d at 832. The Court does not agree with that court's analysis, and will take this opportunity to respond to each point in turn.

First, contrary to Mitchell, this Court believes that the placement of (i)(I) and (i)(II) relative to clauses (ii)-(iv) is logical, considering that subclauses (I) and (II) contain related concepts. In any event, in light of Section 2611(4)(A)'s use of the inclusive term "and" linking clauses (i)-(iv), the Court does not agree with Mitchell, 343 F.3d 829-30, that Congress intended those provisions to be mutually exclusive.

Moreover, contrary to Mitchell, this Court's interpretation of Section 2611(4) is not redundant. To be sure, the "statute becomes recursive when applied to supervisory personnel, because the definition of employer refers back to the word employer itself." Morrow v. Putnam, 142 F. Supp. 2d 1271, 1272 (D.Nev.

12

2001) (finding individual liability for public officials under the FMLA). However, the "commingling" of (i) and (ii) yields an identical result regardless of whether the individual is employed in the private or public sector. Indeed, courts throughout the country, including the Sixth Circuit, have applied subsection (ii)(I) to private employers. See <u>Mitchell</u>, 343 F.3d at 827 (recognizing that the FMLA likely extends individual liability for private-sector employees and collecting cases). For reasons already explained, application of that subsection to public agencies is similarly appropriate.

Second, the Sixth Circuit's conclusion that "commingling of clauses (i) and (ii) with the public agency provision renders superfluous Section 2611(4)(B)," 343 F.3d at 831, is not true to the text. Subsection (B) provides: "For purposes of subparagraph (A)(iii), a public agency shall be considered to be a person engaged in commerce or in an industry or activity affecting commerce." Hardly superfluous, that provision acts to ease the burden of proof on plaintiffs in suits against public agencies.

Specifically, Section 2611(4)(B) <u>expressly</u> waives the requirement that plaintiffs prove that a public agency defendant is "engaged in commerce or in any industry or activity affecting commerce . . . ." It is difficult to envision that Congress would have at the same time <u>implicitly</u> barred suits against individuals within those same agencies. To the contrary, in

light of the stated purposes of the FMLA, among them "ensuring <u>generally</u> that leave is available for eligible medical reasons," 29 U.S.C. § 2601(b)(4) (emphasis added), it appears more likely that Congress intended to extend individual liability to public officials.[7]

Next, the Sixth Circuit expressed concern that an interpretation finding liability for public employees would lead to the untenable result of extending "specific protection to employees of the GAO and the Library of Congress from future successors in interest." <u>Mitchell</u>, 343 F.3d at 831.  According to the court, "it is an exercise in absurdity to consider that the FMLA sought to protect employees from threats posed by any future successors in interest."  <u>Id.</u>

Clause (iv), however, was engrafted onto Section 2611(4) by amendment in 1995.  <u>See</u> Congressional Accountability Act of 1995, Pub. L. 104-1, § 202, 1995 U.S.C.C.A.N. (109 Stat. 9).  Quite clearly, then, when it was enacted in 1993, the FMLA did not seek to protect such employees.[8]  That the inclusion of clause (iv)

---

[7] That Congress sought to shield from liability individuals sued in their official capacities is equally unlikely.  Indeed, to so hold would effectively create a statutory bar to immunity for public officials who would otherwise be entitled to qualified immunity in any event.

[8] When the FMLA went into effect in 1993, it provided:

**(A) In general**

The term "employer" –

14

may have that unforseen effect does not alter the otherwise straightforward language of the clauses with which the Court is here concerned – (i),(ii)(I) and (iii).

Lastly, the Sixth Circuit noted in Mitchell, 343 F.3d 831-32, that had Congress intended for the FMLA to extend individual liability to public agencies, it would likely have referred

---

**(i)** means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or pre-ceding calendar year;

**(ii)** includes –
   **(I)** any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer;
   **(II)** any successor in interest of an employer; and

**(iii)** includes any "public agency", as defined in section 203(x) of this title.

**(B) Public agency**

For purposes of subparagraph (A)(iii), a public agency shall be considered to be a person engaged in commerce or in an industry or activity affecting commerce.

29 U.S.C. § 2601 et seq. (1993).  The statute was later amended to include clause (iv) following completion of a statutorily authorized study which evaluated "whether the rights, protections, and procedures, including administrative and judicial relief, applicable to [the General Accounting Office, the Government Printing Office, and the Library of Congress] and their employees are comprehensive and effective . . . ." See 2 U.S.C. § 1371.  The statute further required the study to "include recommendations for any improvements in regulations or legislation, including proposed regulatory or legislative language." Id.

directly to the definition of the FLSA.  Accordingly, the court explained, Congress must have intended for the definitions of employer in the FMLA and the FLSA to be distinct.  This Court is not persuaded by that argument.

In the first instance, it would have been curious for the FMLA to have incorporated the FLSA's definition of "employer," as that definition makes explicit reference to "labor organizations."  Such a reference in the context of the Family and Medical Leave Act would have been unnecessary and a likely cause of confusion.  In any event, though the FMLA does adopt several of the FSLA's provisions by direct reference, in other instances it does not.  Compare 29 U.S.C. § 2611(1) (defining "commerce"), with 29 U.S.C. § 203(b) (same).

This Court believes that if Congress wanted to shield public officials from liability under the FMLA, it would have done so explicitly; indeed, Congress did so in the FLSA when it excluded from the definition of "employer" "any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization."  29 U.S.C. § 203(d).  See Morrow, 142 F. Supp. 2d at 1274 n.2 (noting that if Congress intended to exempt public managers from liability under the FMLA, "it could have easily so stated, as it had done for officers and agents of labor organizations in the FLSA").  Congress could have as easily included a provision in Section 2611(4) limiting the liability of

16

public agencies to the agencies themselves.  Congress chose not to do so, and this Court is not prepared to read into the statute that effect.

For the foregoing reasons, the Court concludes, as did the Eighth Circuit, that there "is no reason to distinguish employers in the public sector from those in the private sector." Darby, 287 F.3d at 681 (citing Morrow, 142 F. Supp. 2d at 1275). Because the FMLA permits individual liability for employees of public agencies, the Court will permit Plaintiff's suit to proceed against the Executive Director of Human Resources and Administrative Services and the Superintendent of the Willingboro Public Schools.

**IV.  CONCLUSION**

For the foregoing reasons, the Court will deny the motion by Defendants Hopkins and Kittrells for partial judgment on the pleadings under Rule 12(c).  An appropriate Order will be entered.

March 15, 2006                             **s/ Jerome B. Simandle**
Date                                       JEROME B. SIMANDLE
                                           U.S. District Judge